

# NUMBER 13-12-00754-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

THE STATE OF TEXAS,                                                    Appellant,

v.

IGNACIO PINALEZ III,                                                    Appellee.

### On appeal from the County Court at Law No. 7
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Perkes
### Memorandum Opinion by Justice Perkes

The State appeals the trial court's suppression of Ignacio Pinalez's arrest and post-arrest evidence. Pinalez was arrested for driving while intoxicated, a class-B misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04 (a)–(b) (West 2011). By one issue, the State argues the trial court improperly considered evidence that was unrelated to the suppression inquiry on whether Pinalez's stop and arrest were legal. We affirm.

## I. BACKGROUND

McAllen Police Officer Michael Zellers testified that he stopped Pinalez's vehicle after he saw Pinalez run a red light. Officer Zellers called McAllen Police Officer Jose Flores to the scene to conduct field sobriety tests. Officers Zellers and Flores each testified that Pinalez smelled of alcohol and had bloodshot eyes and slurred speech. Officer Zellers stated Pinalez lacked coordination as he fumbled for his driver's license. Officer Flores said Pinalez swayed when exiting his vehicle. Officer Flores further testified that Pinalez showed all six clues of intoxication from the horizontal gaze nystagmus test and showed vertical nystagmus, which "indicates there's a high level of intoxication."[1] Officer Flores arrested Pinalez for driving while intoxicated.

After Pinalez was arrested and placed in a patrol unit, Pinalez informed Officer Zellers that he was a police officer for the San Juan Police Department. Officer Zellers then telephoned San Juan Police Officer Alvino Rodriguez Jr. and informed him that he had arrested Pinalez. During the defense's cross-examination of Officer Zellers, defense counsel asked, "Did it [the telephone call] have anything to do with union business?" The State twice objected on the grounds that the post-arrest telephone call was irrelevant to the determination of whether there was pre-arrest probable cause or pre-stop reasonable suspicion. The trial court overruled the objections, and Officer Zellers proceeded to testify that he asked Officer Rodriguez whether Pinalez "was one of their [local[2]] association members." Defense counsel then asked whether Officer Zellers was aware that Officer Rodriguez "was sanctioned for doing union business on company

---

[1] Pinalez refused to do the "one-leg stand" and "walk and turn" tests because he has a "drop foot," which would hamper his performance on the tests.

[2] Officer Zellers later clarified that the question was whether Pinalez "was a member of the local association."

2

time[.]" The State again objected on relevancy grounds, and the trial court overruled the objection. Officer Zellers admitted he knew Officer Rodriguez was under investigation.

Defense counsel called Officer Rodriguez to testify. Before Officer Rodriguez testified, the State objected that "[h]is testimony is completely irrelevant to the issue of probable cause. If he is going to testify as to anything after the arrest, it's irrelevant and outside the scope of this hearing." The court overruled the objection. The State did not object to any of Officer Rodriguez's testimony about the telephone conversation with Officer Zellers on the night of Pinalez's arrest. According to Officer Rodriguez, Officer Zellers was a representative with the Texas Municipal Police Association, a police union. Officer Rodriguez confirmed Officer Zellers called him and asked if Pinalez was "one of our members." Officer Rodriguez explained, "[H]e told me that if he was one of our members, to see if we could get him some help."

Pinalez testified and denied running a red light. Pinalez admitted that he drank three drinks with a friend, Alamo Police Officer David Rocha, earlier that evening over the course of three hours, but denied being so intoxicated that he could not find his driver's license. Officer Rocha said he did not see Pinalez exhibit signs of intoxication.

After hearing the testimony, the trial court granted Pinalez's motion to suppress. The trial court explained:

> The totality of the circumstances . . . is appalling. The fact that you call—okay, that you call only, you know, an officer, okay and this—this may be after the arrest, okay, but you call the union members of others. Hey, is he a member of your—of this union or he a member of whatever union, okay. That's appalling number one.
>
> Number two, there's no—he doesn't do that. He testified that he doesn't do that. Hey the lawyers—hey doctors—you know, it's got to be policemen, okay. And that evidence, that testimony, you know, the

3

questions that I asked you know, are—are—are troublesome. So the totality of the circumstances—okay, this motion is granted.

The trial court issued findings of fact and conclusions of law in which it found Pinalez's and Officer Rocha's testimony to be credible and Officers Zellers' and Flores' testimony not to be credible. The court concluded that Officer Zellers lacked reasonable suspicion to stop Pinalez's vehicle and that Officer Flores lacked probable cause to arrest Pinalez.

## II.  STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2008); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc). "This is so because it is the trial court that observes firsthand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Ross*, 32 S.W.3d at 855; *see Wiede*, 214 S.W.3d at 24. We afford "almost total deference" to the trial court's determination of historical facts that the record supports, "especially when the trial court's findings are based on an evaluation of credibility and demeanor." *Ross*, 32 S.W.3d at 856 (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc)); *see Wiede*, 214 S.W.3d at 25. We grant the same amount of deference to the trial court's rulings on mixed questions of law and fact that turn on credibility and demeanor. *Wiede*, 214 S.W.3d at 25; *Ross*, 32 S.W.3d at 856. When a trial court makes explicit fact findings,

4

we determine whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings. *State v. Kelley*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review the trial court's legal rulings de novo unless the supported-by-the-record fact findings are dispositive of the legal ruling. *Id.*

## III. PRESERVATION

To preserve error, an appellant must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a); *see Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). Moreover, to preserve error in admitting evidence, a party must object each time the inadmissible evidence is offered or obtain a running objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (en banc). An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Valle*, 109 S.W.3d at 509.

## IV. SUPPRESSION EVIDENCE

The State asserts the trial court erred in overruling the State's objections to, and in considering, the evidence of appellant's and the arresting officers' union membership and participation. The State characterizes such evidence as irrelevant to the suppression inquiry of whether Officer Zellers had reasonable suspicion to stop Pinalez or whether Officer Flores had probable cause to arrest Pinalez.

The State objected to defense counsel's questions about the phone call directed at Officer Zellers, but because the State failed to object when Officer Rodriguez testified regarding the same evidence, the State waived this issue. *See* TEX. R. APP. P. 33.1(a)

5

(establishing that proper preservation is a prerequisite to appellate review); *Lane*, 151 S.W.3d at 193 (holding that error in the admission of evidence is cured where the same evidence comes in elsewhere without objection); *Valle*, 109 S.W.3d at 509 (same). Although the State objected to Officer Rodriguez testifying before he began his testimony, the State was not thereby relieved of its burden to timely object to inadmissible testimony. *See Valle*, 109 S.W.3d at 509 (holding a party must object each time inadmissible evidence is offered or obtain a running objection); *Ethington*, 819 S.W.2d at 858 (same). The State did not object to any of Officer Rodriguez's actual testimony, which detailed Officer Zeller's inquiry of whether Pinalez was a union member, and the State did not secure a running objection. We overrule the State's issue as unpreserved. *See* TEX. R. APP. P. 33.1(a); *Lane*, 151 S.W.3d at 193; *Valle*, 109 S.W.3d at 509; *Wise v. State*, 223 S.W.3d 548, 558 (Tex. App.—Amarillo 2007, pet. ref'd) (holding that although the appellant objected to some leading questions during the suppression hearing, the appellant's failure to object each time an improper question was asked rendered the complaint unpreserved).

Even assuming the State preserved its challenge, we would overrule it because the trial court did not abuse its discretion in considering the evidence. The trial court has broad discretion in determining the admissibility of evidence, and we do not set aside the court's ruling absent a clear abuse of discretion. *Butterfield v. State*, 992 S.W.2d 448, 458 (Tex. Crim. App. 1999); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991) (en banc). In this case, the suppression determination turned on the credibility of the competing witnesses—two police officers for each side. There was no video or other contemporaneous evidence of the stop and arrest. Accordingly, evidence of the

6

arresting officers' conduct at or around the time of Pinalez's arrest was relevant in weighing their credibility. Even assuming the conduct suggesting potential police bias occurred immediately after the arrest, it nevertheless preceded any subsequently drafted police reports, the official charge against Pinalez, and the officers' suppression testimony regarding the level of Pinalez's intoxication.[3] Thus, the trial court did not clearly abuse its discretion by considering the evidence. *Butterfield*, 992 S.W.2d at 458; *Allridge*, 850 S.W.2d at 492.

We defer to the trial court as the sole judge of the witnesses' credibility and the weight to be given their testimony.[4] *Wiede*, 214 S.W.3d at 24–25; *Ross*, 32 S.W.3d at 855. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude the evidence supports the court's fact findings. *Kelley*, 204 S.W.3d at 818.

## V. CONCLUSION

We affirm the trial court's order.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
16th day of January, 2014.

---

[3] The State cites *Neaves v. State*, 767 S.W.2d 784, 787 (Tex. Crim. App. 1989) (en banc), for the principle that post-arrest facts do not establish probable cause for the arrest. We agree with this rule of law, but this is not helpful when, as here, the inquiry is the *credibility* of the source asserting that probable cause preceded an arrest.

[4] The State relies on *Texas Department of Public Safety v. Gutierrez*, No. 04-10-00107-CV, 2010 WL 3582395, at *3 (Tex. App.—San Antonio Sept. 15, 2010, no pet.), where our sister appellate court reinstated an administrative law judge's order, which the trial court had reversed, suspending the defendant's driver's license. *Gutierrez* does not assist the State's case; it emphatically states that a reviewing court must defer to the credibility assessments made by the trier of fact that actually observed the witnesses. *See id.* We agree, and we have applied the relevant deferential standard for this case.